Good morning, Your Honors. May it please the Court, my name is James Felton, F-E-L-T-O-N. I represent the appellate Shirley McClure. We've provided you much briefing, and I think this case boils down to something pretty simple. In our brief on page 30, we cite from Judge Munn's decision of November 17, 2009. And the issue that she was grappling with is, what agreements between my client and Mr. Litt was she aware of, and which agreements did she consider? And what should she have known? What she wrote was the following. As to the issues of whether or not I looked at other agreements, I was well aware of at least those two agreements. These 17 agreements, or whatever that is you know, I don't think that was put before me. But I was well aware of those two, because I'm the one that just raised them now, since nobody else had at the time that I made my initial ruling. My initial ruling basically said that as far as the award of fees by this Court, those are not, those agreements are not binding on this Court. And I would not award fees based upon those agreements for the simple reason that I had a confirmed plan, or I don't know whether it was modified, whatever it was called. It was called something, confirmed plan, set forth a fee agreement, and I entered an order approving that agreement. And what I ruled at that time, well aware that there were later negotiations between them and documents signed, was that I wasn't going to go with any of those, because those had not been put before the Court for approval, as they would have had to be. That was my ruling. This is excerpts of records 695 to 743. But she also said, didn't she, that, well, at least she refused to sanction Mr. Litt for not having gotten the earlier of the, I mean, there's really only one other agreement, because one wasn't signed, right? So there's just one. There's a 2006 one. There's, in terms of agreements, that's true. But there's also lots of other disclosures that we describe in our brief that weren't made that should have been before her. She had some. There's no doubt that she had some. And I don't want to argue that she didn't know about some of them. The question is whose burden. But what ultimately is Ms. McClure trying to do? Is she trying to enforce the 2006 agreement? Is she trying to enforce the 2007 agreement? Or is she trying to back out of all of them? She's trying to enforce her understanding, which was that she was only going to pay $9 million. And that was the understanding that was conveyed to her, to her accountants, based upon all of the tax planning that was done. And that's what she thought she was getting into. And if that wasn't the case, Your Honor, that all of those, all of the other arguments that Mr. Litt had as to why it shouldn't have been that should have been before Judge Mundt. Judge Mundt had some information. She did. But the reality is between Mrs. McClure and Mr. Litt, who had the burden? Mr. Litt did. They were already adverse at this time. Mr. Litt had already taken the $9 million, and they were already in litigation in state court. What was she supposed to do other than say to the judge, hey, wait, you don't know everything? And this judge plainly, at least looking at her words, said, I don't have that stuff before me. I know it exists, but I don't have it before me. And all we're asking this Court to do is to give Judge Mundt a chance to look at all of that information with it all before her and all of the disclosures. How long has Judge Mundt had this case? Judge Mundt has had this case a long time, Your Honor. How long? Twenty years, roughly. Twenty years, yeah. Roughly 20 years. Yeah. Let me ask you one question. You mentioned on who was the burden, but you didn't say what the burden was. The burden under the Bankruptcy Code, Your Honor, is to provide disclosures of any relationship between you and your client by the lawyer who's seeking fees from the Bankruptcy Court. That's what the lawyer is supposed to do. And the cases which we've cited, numerous cases, talk about it has to be a complete disclosure, not a partial. But how does that – see, that's why I think this is going off in two different directions at once, because if the problem is the lack of disclosures, then presumably the remedy is that none of this is any good. And you start from scratch and you don't – but you say that she is trying to essentially enforce the $9 million understanding, although she doesn't want to give up her malpractice case. No, she doesn't want to give up her malpractice case. That should have been, frankly, considered as well, because that should have been considered as an offset. But Judge Mundt didn't want to do that. So we've got the malpractice issue. We've got the disclosures that Mr. Litt should have made, which we outline on page 57 of our briefs that weren't made, all of which may – maybe they wouldn't, but they may have changed Judge Mundt's mind. As to what? As to whether to say it's $9 million or whether to say it's nothing? Well, as to whether it's $9 million, to be fair. The issue as to whether he should get nothing really comes down to if he failed to give disclosures, there's a potential remedy for that. But her argument is it was $9 million, not 10-plus. And he was already paid the $9 million. In her view, he shouldn't be paid more. But what was the difference between the 2007 agreement, which who didn't sign it? Litt didn't sign it because she wasn't willing to give a waiver? Is that what happened? I believe that's the case, Your Honor. But no one seems to be arguing that the 2006 agreement is still in place, and she claims she was coerced into it and everything else. The question that I pose to this – So what – in other words, if it isn't the 2006 agreement, It's the agreement that she understood it was $9 million. An oral agreement? A different agreement? It was partially written, partially oral. The problem, as Judge Pragerson noted, Justice Pragerson noted, I apologize. Judge Pragerson. It's not justice. We're all judges. Okay. As the great Walter Ely would say, there's no justice on the Ninth Circuit. I'm supposed to laugh. Go ahead. She understood it was $9 million, Your Honor. And that's what she thought she was getting into, and that's why she told her tax advisors, and that's why the tax planning that was done and the structuring of the 1033 was done in that way. And that's what's caused her significant harm. I hope – Judge Mund is a very good judge. I've been before her, you know, many, many times. I want her to have the opportunity to look at everything that she should have seen, and that's why we're here. You're kind to her. This is a – Thanks. Good morning. George Shulman for Barry Witt. You know, you look like a young Max Bleacher. Thank you very much, Your Honor. I've known Mr. Bleacher for many years. That's a high compliment. Let me return to these two agreements. The 2006 agreement was executed by both parties. The 2007 agreement was not executed by McClure, and it was not executed by McClure because at the time, she was represented by Loeb and Loeb, and they advised her not to sign it because it contained releases. Right. Okay. That's the factual record. That's the factual record. We know that Loeb and Loeb advised her of that because McClure told us that. I mean, what's disturbing about this is that you have – that Mr. Litt got the advantage of having the $9 million all that time, and now he's saying essentially he had no right to that $9 million at that time. He didn't have any right to it until he came and got an approval from the court, and he wants an approval for $10.5 million or $10.2 million. So he seems to have gotten benefits in both directions. Well, Mr. Litt signed an agreement in 2006 agreeing to take $9 million, and that agreement also has releases. There are other terms, but those are the critical terms. Are you arguing that that's a binding agreement now? No. No, Your Honor. Because it wasn't approved by the court. No. That's not why we argued that. Ms. McClure, when she filed her malpractice case in 2008, alleged that the contract was obtained by fraud and it was obtained in violation of California rules of professional conduct that apply to lawyers. When Litt filed his fee application, he attached the 2006 agreement and said he was willing to be bound by it. Well, now everybody's willing to be bound by it, so why don't we just be bound by it? Well, he said he was willing to be bound by it. McClure filed an opposition. He just said she's willing to be bound by it now, by the $9 million. It contains releases. She was given that opportunity in bankruptcy court. She filed an opposition, and she said that document was obtained by fraud, and I don't want to be bound by it. I want to sue over it in superior court. Judge Mund even asked from the bench whether she was willing to be bound, and she wouldn't answer. We offered, representing the attorney who executed the agreement, if you want to be bound by it, Litt was willing to be bound by it. So to come into court now and to argue that Judge Mund should have looked at that agreement and limited Litt when McClure is unwilling to be bound by the agreement. She's suing him over it, and she's saying I won't be bound by it. It seems to me is not a proper argument. You can't ask the Court to consider something that you're not willing to be bound by. And she's not here today saying that she's willing to be bound by it. All that she wants to do is to limit Litt's fees to $9 million and continue to sue him. She's made it clear in bankruptcy court she does not want to honor the releases that is there. She's going to argue in superior court that there are no releases. I wanted to respond to something else that Mr. Felton had said. He said that Mr. Litt had not made various excuses. I've not been authorized to make that deal. If the Court is mediating now, I suppose we could. But I've not been asked that because Ms. McClure's consistent position from 2008 forward, even before 2008, is she does not want to be bound by the 2006 agreement. She's said so innumerable times in writing. Litt said he was willing to be bound. When she said that she wasn't, then Judge Mund enforced the written agreement that governs fees, which is the amended plan of reorganization. What was the amount of the original verdict against the City of Long Beach? The original verdict against the City of Long Beach was about $22.5 million. It may have been precisely $22.5 million. It was then reduced by Magistrate Judge Ike to $13,500,000 or something like that. And that was after a seven-and-a-half-month trial and a four-and-a-half-month jury deliberation, reportedly the longest jury deliberation ever. Apparently they like the food downtown. Then there was a year-long contested proceeding on attorneys' fees. And McClure was awarded about $10,050,000 in attorneys' fees and cost statutory because it was a housing discrimination claim. That brought the total judgment to almost $24 million. That was appealed by the City of Long Beach to this Court, and then it settled for $20 million while on appeal at this Court. The cash payment was made to Mr. McClure. The check was made to McClure. She deposited the check in her account. She told Lit that she was going to arrange to get him and the other professionals paid, and she never did anything to do so. Her general bankruptcy counsel, Thompson Young, a name partner in the Pachulski firm, told Lit that he didn't need a fee application, that that advice was wrong. We conceded that on the fee application. That advice was wrong. That's why we filed the fee application. We filed the fee application to solve that problem. She was alleging in the Superior Court case. She's still alleging in the Superior Court case that ---- What firm are you with? I'm with Dannegill, Diamond, and Colas. Okay. She's still ---- you were in the middle of the sentence. She's still alleging in the Superior Court case. She's still alleging in the Superior Court case that Lit owes her damages for not filing a fee application. We suggested in the Superior Court and the Bankruptcy Court that that's within the exclusive jurisdiction of the Bankruptcy Court. In the Superior Court case in 2008? In 2008. I don't understand. Why isn't that barred by the 5-year statute if you haven't gone to trial? It's stayed currently by order of the Superior Court. There are two reasons for the stay, but it's stayed currently. But otherwise, you're right, Your Honor, it would be barred by the 5-year statute. Okay. So I'm still somewhat baffled by why Judge Mundt didn't just say, all right, there was this agreement in 2006. You didn't bring it to my attention. I didn't approve it, but I excuse her for that. She did say that. I mean, she didn't sanction him. But at the same time, she didn't enforce it because she hadn't approved it? She didn't enforce it because McClure said she didn't want to enforce it. Well, I understand she said that, but that doesn't mean that it's not enforceable. It's only not enforceable. The only argument for it not being enforceable is that it wasn't approved by the Bankruptcy Court, right? No, those aren't the arguments that McClure made as to why it wasn't enforced. Well, I know she has all these other arguments about fraud and so on. But if you're not going to adjudicate that in the Bankruptcy Court. Well, McClure was represented at the time the agreement was signed, the 2006 agreement was signed. She was represented by Picholsky, Stang, Zeal, Young, and Jones, I think the firm was called at that time. Mr. Young was her lawyer. He's a name partner there, and he's since passed away. Thereafter, she was represented by Loeb and Loeb for a while. Thereafter, she was represented by Larry Diamond and Irv Gross, and the firm was a. . . What's the relevance of all that? She had all sorts of general bankruptcy counsel, all of whom were free to bring the agreement to court and to seek its enforcement. She was free when Whit filed his fee application to say, I don't want to pay $10.1 million. I only want to pay $9 million. Please enforce that agreement. And we'd be done. She doesn't want to be bound by the releases. She only wants to be bound by the $9 million. Litt compromised with her on fees in order to be done with the threats. Mr. Felton also made a point of Mr. Litt not making appropriate disclosures, and he pointed to page 57 of his brief. The very first disclosure he says Mr. Litt didn't make is that McClure worked for Litt as a paralegal in his office. McClure was required to work for Litt by the terms of the amended plan of reorganization that were approved by Judge Mund in 1999, and Judge Mund said on the record that she knew that McClure was working for Litt. I don't know what more disclosure needed to be made since she was working there by virtue of a court order. This is a case about choices that a litigant has made. Perhaps she should have decided to enforce the 2006 agreement, but she chose not to do so. She wants to pursue her claims in superior court. Did the 2006 waiver necessarily cover everything that's involved in the superior court case now? I thought some of it had to do with tax advice and so on. The tax advice started, according to McClure, the tax advice started before 2006. The record will show that that's true as well, but according to McClure, the tax advice started before 2006. I would think that the 2006 agreement would cover the claims that are currently extant in the superior court, but she would like to amend that complaint when the case is no longer stayed, and she may make claims that are not covered by the releases. And that would be something for the superior court to decide if the 2006 agreement was enforced. But I don't know how you send it back for enforcement when the litigant keeps telling you that she doesn't want it enforced. She said so in writing multiple times. She doesn't want it enforced. All that she wants enforced is the limitation, the $9 million limitation. Thank you very much, Your Honor. Thank you. Thank you. Very briefly. Can I ask you a question? Where's the money now? The money for the, you know, the money from the settlement or the money from the? $9 million. Well, $9 million lit has. The remaining money for the settlement. The remaining money for the settlement has, is subject to, well, let's see. I stopped being her bankruptcy counsel about five months ago, so the remaining money is basically still subject to the court's bond. Did I read somewhere that there's a second bankruptcy? Yes. There was a second bankruptcy filed in 2012. Oh, she has another bankruptcy? Yes. It was filed in 2012? Correct. Oh, so, well, what I want to know is, is the money that would cover the fee, the attorney's fee, has that been put in an interest-bearing account? I know you don't get much interest these days. Not exactly, Your Honor, but I can explain. And maybe some things have happened since I stopped being her lawyer. But Judge Mund issued orders, and it's a process of issuing orders, determining certain property can be pledged as a bond, essentially a bond, over the payment of that $1.2 million. And are you guys still working on figuring out the properties? There's still proceedings going on in the second bankruptcy as to the late file, an abstract of judgment. There's proceedings in the Bankruptcy Court about how far that abstractive stands. Oh, the abstract of judgment. That's the answer to the question of where the money is. Mr. Feldman, where's the $9 million? $9 million has been paid. Huh? The $9 million has been paid. It's where? It's been paid. He already took the $9 million. $9 million has been paid. Where's the rest of it? The rest of it is subject to continuing court proceedings before Judge Mund, where she's going to allow essentially a bond by Ms. McClure putting property up, the value of which is 200 percent of the $1,000,002. So it's just these proceedings are ongoing, but she's got to value the property and blah, blah, blah. It's all a very sad story, and one which, of course, does remind what it was. I want to take off on what Mr. Shulman said. If you prevail and we reverse and we remand, is it your position that we should remand with instructions that Judge Mund follow the 2006 agreement and enforce the 2006 agreement? Is that what you want? No, Your Honor. I want her to consider not only the 2006 agreement, but what's happened since. Because post-2006, based upon the tax advice that Mr. Litt gave, there are significant issues that are causing her damage, which is the subject of the State court case. But the bottom line, the bottom line problem here is that she wants to limit it to $9 million, but she doesn't have any agreement on which she's basing that because she's not willing to enforce the 2006 agreement or the non-fully executed 2007 agreement. So where does she get the $9 million from? She gets the $9 million based upon her understanding of what it was supposed to be. Which is not a no actual contract. It's the 2006, less the releases, because of what happened since, because of the tax advice that's turned out to be wrong. So she wants Judge Mund to it, but you couldn't come to that conclusion unless you adjudicate it, essentially the thrust of the, the... Malpractice case.  Which is why we asked Judge Mund to say it in the first place. Okay. She'd like the 2006 agreement except for paragraph 2, the mutual release. Yes. So, I mean, we just have to scratch that out. Well, I understand. Who has to scratch that out? Not us on the instruction. I think, I think... But Judge, upon what elements of judgment can Judge Mund scratch out paragraph 2? She can decide that, that evidence about malpractice should cause her to either consider that malpractice in whether the fees, the $9 million should be paid... The evidence of malpractice is better dealt with in the California State Court. Then she should have stayed the fee application process. Do you think that was an abuse of discretion? I think given what she said, that she knew of these agreements but didn't consider them, I do believe it was abuse of discretion. Was there a motion for disgorgement filed by Ms. McClure? No. Okay. Thank you. Okay. That is amended.
judges: Pregerson, Berzon, Bea